UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,                                  Case No. 1:07-cr-60

v.                                                HON. JANET T. NEFF

REGINALD CORNELL NEAL,

        Defendant.
_____/


**SENTENCING MEMORANDUM**

On October 2, 2007, defendant entered a plea of guilty to two counts of a Superseding Indictment, including possession with intent to distribute an unspecified quantity of cocaine base[1] (crack cocaine) (Count 2), and possession of a firearm in furtherance of a drug trafficking crime[2] (Count 3). On March 5, 2008, the Court sentenced defendant to 30 months' imprisonment on Count 2 and a mandatory consecutive term of 60 months' imprisonment on Count 3.[3] In imposing sentence, the Court determined that the career offender enhancement under the U.S. SENTENCING GUIDELINES (U.S.S.G.) MANUAL § 4B1.1 (2007) did not apply, and that even if the enhancement were applicable, a variance from the sentencing guidelines advisory range was warranted under the

---

[1] 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

[2] 18 U.S.C. § 924(c)(1)(A)(i).

[3] At the sentencing, the Court granted the government's motion to dismiss Count 1.

sentencing factors in 18 U.S.C. § 3553(a). This memorandum sets forth the Court's specific reasoning for those determinations.

## I. Background and Facts

Defendant was arrested on March 20, 2007, after the police executed a search warrant at a residence occupied by defendant in Muskegon, Michigan and discovered 4.32 grams of crack cocaine, 1.75 grams of marijuana, $2,865, and a loaded .32 caliber semiautomatic pistol in a bedroom of the home (Presentence Investigation Report (PSR) ¶¶ 10, 18-19). Defendant admitted that the crack cocaine and the gun were his and that he sold the crack cocaine for income, although he reported that the marijuana was for personal use (PSR ¶ 22). Defendant described himself as a "small time" dealer, stating that he sold a few grams of crack cocaine every couple of weeks (*id.*).

On October 2, 2007, defendant entered a plea of guilty to counts 2 and 3 of the Superseding Indictment. The PSR calculated defendant's base offense level at 22, and noted a two-level reduction for acceptance of responsibility and an additional one-level reduction for timely notification of his intention to plead guilty, resulting in a total offense level of 19 (PSR ¶¶ 29-37). However, after a probation office determination that the career offender enhancement applied, the PSR offense level was recalculated under U.S.S.G. § 4B1.1 as "34" to which the above three-level reduction was applied, for a total offense level of 31 (PSR ¶ 38).

Similarly, although defendant's criminal history was initially calculated as Category IV, the application of the career offender enhancement automatically moved defendant to the highest criminal history category, Category VI, pursuant to § 4B1.1 (PSR ¶¶ 54-55). Based on the total offense level of 31 and a criminal history category of VI, the Guidelines range for imprisonment was 188 to 235 months (PSR ¶ 84). Defendant was also subject to a mandatory, consecutive five-year

term of imprisonment for possession of a firearm in furtherance of a drug trafficking crime (Count 3) (PSR ¶¶ 82-83).

Defendant filed a sentencing memorandum objecting to the career offender enhancement under § 4B1.1 and challenging the application of the crack/powder cocaine 100-to-1 ratio. Defendant requested that the Court consider either a departure or a variance in imposing sentence.

With regard to the career offender enhancement, defendant argued that his prior offense of resisting and obstructing a police officer under MICH. COMP. LAWS ANN. § 750.81d(1) did not constitute a predicate violent crime for purposes of the enhancement. Defendant noted that his offense stemmed from an incident in which the police stopped defendant when he was riding his bicycle because they thought he was warning some crap shooters on the street about the officers' presence. While defendant was talking with the police, he dropped his bicycle and ran. Defendant was apprehended a short distance away when he stopped and laid down on the steps of a house. The offense resulted in a six-month sentence.

Defendant argued that his resisting and obstructing offense was not properly categorized as a violent crime. He noted that the career offender enhancement increased his sentencing range four-fold, from 46-57 months to 188-235 months.

Defendant also urged the Court to consider the disparate impact of the crack/powder cocaine 100-to-1 ratio on defendant's case. He noted that the 100-to-1 ratio has been criticized as too severe and as having a disparate impact on black defendants. Defendant pointed out that although the U.S. Sentencing Commission recently promulgated a two-level reduction in crack-cocaine offense levels, which is to be applied retroactively, the Commission has acknowledged that the change was only a partial remedy to the problems associated with the 100-to-1 ratio. Defendant stated that absent

application of the crack/powder ratio, the pre-enhancement advisory guideline range for Count 2 would be 15-21 months, rather than 46-57 months as calculated.

The government filed a response to defendant's sentencing memorandum and objection, requesting that the Court find that defendant's conviction for resisting and obstructing a police officer was a crime of violence and that the PSR properly scored defendant as a career offender under the Guidelines. The government acknowledged that no published Sixth Circuit decisions had yet addressed whether resisting and obstructing a police officer is a crime of violence; however, three unpublished decisions had so held. Further, under the guidance in decisions from the U.S. Supreme Court, the offense of resisting and obstructing should be categorized as a violent crime.

The government argued that the Guidelines were properly scored in this case and that based on the instant offenses and defendant's criminal history, a variance was unwarranted. The government urged the Court to sentence defendant within the Guideline range of 188-235 months' imprisonment for Count 2.

After careful consideration of the arguments and controlling authority, the Court determined that defendant's prior offense under Michigan law, § 750.81d(1), did not constitute a violent crime for purposes of the Guidelines career offender sentencing enhancement. Further, even if the enhancement applied, a sentencing variance was warranted under the § 3553(a) factors.

## II. Career Offender Enhancement

Under the Sentencing Guidelines, career criminals are subject to sentencing enhancements that place them at or near the maximum term authorized. 28 U.S.C. § 994(h); 21A AM. JUR. 2D *Criminal Law* § 869. The Guidelines require that, if the offense level for a career criminal from the table contained in § 4B1.1 is greater than the offense level otherwise applicable, the offense level

from the table is applied. 21A AM. JUR. 2D *Criminal Law* § 869; U.S.S.G. MANUAL § 4B1.1(b). Further, a career offender's criminal history category in every case is Category VI. U.S.S.G. MANUAL § 4B1.1(b).

As provided in § 4B1.1, a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  A crime of violence is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. Manual § 4B1.2

At issue is whether defendant's prior conviction of resisting and obstructing a police officer under MICH. COMP. LAWS ANN. § 750.81d(1) constitutes a crime of violence under the § 4B1.2(2) residual provision because it "involves conduct that presents a serious potential risk of physical injury to another."[4]  In resolving this issue, the courts must employ the "categorical approach" to analyze whether a prior offense is a crime of violence.  *James v. United States*, 127 S. Ct. 1586, 1593-1594 (2007); *United States v. Martin,* 378 F.3d 578, 582 (6th Cir. 2004).  Under this approach,

---

[4] There is no dispute that defendant's resisting and obstructing conviction does not meet the definition of crime of violence under subdivision (1) based on the elements of the offense, and that it is not an enumerated offense under subdivision (2).

the court looks only to the fact of conviction and the statutory definition of the prior offense, and does not generally consider the particular facts underlying the prior conviction. *Shepard v. United States,* 544 U.S. 13, 17 (2005); *Martin,* 378 F.3d at 581. That is, the court considers whether the offense is of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender. *James*, 127 S. Ct. 1586 at 1594. The government bears the burden of proving that the defendant qualifies for a sentence enhancement. *United States v Collier,* 493 F.3d 731, 733 (6th Cir. 2007).

It appears that no published decision in the Sixth Circuit has addressed whether the Michigan offense of resisting and obstructing constitutes a crime of violence. The government cites three recent unpublished orders of the Sixth Circuit as authority for holding that the offense at issue in this case is a crime of violence for purposes of the career offender enhancement, *United States v. Blomquist,* Appeal No. 06-1111 (6th Cir. November 27, 2007); *United States v. Baker,* Appeal No. 03-1676 at *3 (6th Cir. November 7, 2005); and *United States v Brooks,* Appeal No. 03-2051 at *4 (6th Cir. November 7, 2005). The Court does not find these decisions controlling with respect to the offense at issue.

In *Blomquist*, *Baker,* and *Brooks*, the courts addressed whether prior offenses for resisting and obstructing a police officer qualified as crimes of violence without reference to the specific offense at issue. The government's reliance on these decisions overlooks a crucial distinction in that under Michigan law, the offense category of resisting and obstructing an officer encompasses a number of specifically enumerated statutory offenses, with graduated punishments depending on the severity of the offense committed and the level of harm involved. See MICH. COMP. LAWS ANN. § 750.479 and § 750.81d(1).

In this case, the prior offense at issue falls under MICH. COMP. LAWS ANN. § 750.81d, "[a]ssaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties." Section 750.81d sets forth four different offense levels:

> (1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
>
> (2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties *causing a bodily injury requiring medical attention or medical care* to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.
>
> (3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties *causing a serious impairment of a body function* of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.
>
> (4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties *causing the death of that person* is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both. [Emphasis added.]

At the lowest offense level, subsection (1), at issue in this case, the offense is committed merely by assaulting, battering, wounding, resisting, obstructing, opposing, *or* endangering an official. By definition, "obstruct" "includes the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command* pursuant to § 750.81d(7)(a). Thus, while the offenses in subsections (2), (3), and (4) inherently involve "conduct that presents a serious potential risk of physical injury to another," the same cannot be said of an offense under subsection (1) by merely resisting, obstructing or opposing a police officer. Accordingly, the particular offense

level at issue is an important factor in determining whether a prior conviction of resisting and obstructing under Michigan law is considered a violent crime for purposes of the career offender enhancement.

A federal sentencing court considering an enhancement under the categorical approach must take state law as it finds it, including the state courts' interpretation of state law. *Collier,* 493 F.3d at 737. The Michigan courts' interpretation of resisting and obstructing offenses further convinces this Court that defendant's prior conviction under § 750.81d(1) is not categorically a crime of violence. In *People v. Vasquez,* 631 N.W.2d 711, 716 (Mich. 2001), the Michigan Supreme Court considered the conduct encompassed under the offense of resisting and obstructing, MICH. COMP. LAWS ANN. § 750.479, which at the time, similarly to § 750.81d, stated in relevant part:

> Any person who shall knowingly and willfully ... obstruct, resist, oppose, assault, beat or wound ... any person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace shall be guilty of a misdemeanor....

In deciding the conduct encompassed in § 750.479, the court stated:

> The words "assault, beat, or wound" necessarily contain an element of violence; whereas, the words "obstruct, resist [or] oppose" may, but do not necessarily, contain an element of violence. For example, one cannot "assault, beat, or wound" an officer without being violent; *however, one can "obstruct, resist, [or] oppose" an officer without necessarily being violent*. What this leads us to believe is that when the Legislature used these six words together, *it intended to proscribe both violent and nonviolent physical interference*; physical interference being the only element common to all six words. Therefore, by grouping these six words together as a part of a single type of prohibited conduct, the Legislature has demonstrated a purpose of proscribing conduct amounting to actual or threatened physical interference. [Emphasis added.]

*Vasquez,* 631 N.W.2d at 716.

The Michigan Supreme Court's interpretation definitively states that the general offense of "resisting and obstructing" is intended to proscribe both violent and nonviolent physical interference. In determining whether an offense constitutes a crime of violence, this Court must consider whether conduct encompassed by the offense in the ordinary case or by its nature presents a serious potential risk of harm. *James,* 127 S. Ct. at 1597. While the more severe offense levels under § 750.81d(2), (3) and (4) may be considered crimes of violence for purposes of the career offender enhancement, it cannot be said that an offense under § 750.81d(1) by its nature involves "conduct that presents a serious potential risk of physical injury to another."

A close review of the case law reveals the importance of the crucial distinction between offense levels when considering whether a prior conviction constitutes a predicate offense for sentence enhancement. In *Martin,* the Sixth Circuit held that a conviction of fleeing and eluding in the third degree under Michigan law is a crime of violence. *Martin,* 378 F.3d at 584. However, in *United States v. Foreman,* 436 F.3d 638, 643 (6th Cir. 2006), the Sixth Circuit addressed the distinction between third and fourth degree fleeing and eluding, observing that third-degree fleeing and eluding required proof of an additional element. The court concluded that fourth-degree fleeing and eluding has a potential risk of physical injury to another, but for a crime to be one "of violence," it must have a "*serious* potential risk of physical injury." *Id.* at 643-644. The court noted that in *Martin,* the offense of third-degree fleeing and eluding was found to be a crime of violence on the basis of the elements of fleeing in a low speed zone or causing an accident. *Id.* at 643. Because those elements were absent in the fourth-degree offense at issue in *Foreman*, the defendant's prior conviction was not categorically a crime of violence. In that instance, the court was required to look beyond the statutory offense to the "*Shepard* sources," such as the charging document, the written

9

plea agreement, the transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. *Foreman,* 436 F.3d at 643.

In this case, the Court concludes that, contrary to the government's arguments, defendant's prior conviction under § 750.81d(1) is not a predicate crime of violence. For purposes of the career offender sentence enhancement, the distinction between various offense levels under Michigan law is important, as reflected by the harm referenced and the punishment imposed. This distinction must not be ignored. "Nearly any criminal offense has the potential risk of physical injury to another." *Foreman,* 436 F.3d at 643. Under the Guidelines, "the potential risk must be *serious* in order for the offense to be a 'crime of violence.'" *Id.*

Even if the Court were to conclude, as in *Foreman*, that further inquiry was necessary to determine whether defendant's offense under § 750.81d(1) is a crime of violence, the record contains no *Shepard* source documentation. The only documents provided are three police reports of the underlying incident, which do not indicate a serious risk of potential harm. In fact, the reports indicate the contrary, an absence of any risk of harm. Given the record, defendant's prior offense cannot be considered a crime of violence.

### III. Variance

The "crime of violence" inquiry is not the end of the sentencing determination. *Foreman,* 436 F.3d at 643-644. The Sentencing Guidelines are the "starting point and the initial benchmark" for federal sentencing. *Gall v. United States,* 128 S. Ct. 586, 596 (2007); *United States v. Thompson,* 515 F.3d 556, 2008 WL 351283 *4 (6th Cir. 2008). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall,* 128

10

S. Ct. at 596; see also *United States v. Moon,* 513 F.3d 527, 538 (6th Cir. 2008). The district court must make an individualized assessment based on the facts presented and adequately explain its choice. *Gall,* 128 S.Ct. at 597; *Moon,* 513 F.3d at 538. If the court decides that an outside-Guidelines sentence is warranted, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Gall,* 128 S. Ct. at 597. The court must ultimately "impose a sentence sufficient, but not greater than necessary," to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States,* 128 S. Ct. 558, 570 (2007).

After considering the § 3553(a) factors, the Court concludes that the advisory guidelines range, whether calculated with the career offender enhancement (188 to 235 months) as recommended by the probation office, or without the enhancement (46-57 months), is greater than necessary to accomplish the goals of sentencing in this case with respect to Count 2. See *Foreman,* 436 F.3d at 643 (regardless whether the district court determines that a defendant's prior offense was a crime of violence, the district court is not bound to adhere to the Guideline range). That is, even if the career offender enhancement is applied, the district court may conclude that the sentence ought to be lower than the Guideline range due to § 3553(a). *Foreman,* 436 F.3d at 643.

The § 3553(a) factors include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  . . . the [Guidelines] sentencing range . . .;

(5)  any pertinent policy statement issued by the Sentencing Commission . . .;

(6)  the need to avoid unwarranted sentence disparities . . .; and

(7)  the need to provide restitution to any victims of the offense. [18 U.S.C. § 3553(a)]

With respect to the nature and circumstances of the defendant, § 3553(a)(1), the Court considers that, other than the gun, this case involves a relatively minor offense, even given a similar prior sale of crack cocaine. Defendant is a relatively minor drug seller–in vernacular terms, a "penny-ante criminal." Taken together, his two drug offenses involve approximately six grams of cocaine. Defendant admitted that the contraband found in the bedroom of the residence was his. Contrary to the government's argument, the Court does not find that defendant's criminal history, which includes various unscored offenses, requires a significant sentence because defendant is clearly going to recidivate. In particular, the Court is not convinced that defendant's 1998 offense

of using a slingshot to shoot a rock at a truck, and the assessment of one criminal history point, warrants the severe effect under the Guidelines of moving defendant from a Criminal History Category III to a Category IV. While the Court acknowledges defendant's prior offenses, some of which are serious and troublesome, this history does not persuade the Court that defendant is irredeemable and necessarily will recividate. In relative terms, the Court finds defendant in the middle range of offenders in terms of criminal history.

With regard to the need for the sentence imposed, § 3553(a)(2), the Court likewise concludes that defendant is in the mid-range. The Court agrees with the government that defendant, who is now 27 years old, has had a fairly significant number of contacts with the law since he was 18 years old. This indicates that defendant to a certain extent lacks a sense of respect for the law. Accordingly, his sentence should be sufficient to promote respect for the law. Nonetheless, the Guidelines range of 248-295 months' imprisonment, recommended by the probation office and supported by the government, in no way approximates "just punishment" in this case, even considering the gun, and particularly considering that the gun results in a mandatory 60 months consecutive sentence. Such a sentence would be Draconian. In the court's view, "just punishment" in this case requires a sentence that acknowledges that defendant has made a major mistake and must learn from it.

The sentence should also address deterrence, which is a particularly important consideration in this case. Defendant himself acknowledges the need for a sentence that will deter him and others from criminal involvement. Here, a statutory minimum five-year sentence, consecutive to the sentence for Count 2, is imposed for Count 3, which addresses the weapon issue and is more than

adequate. Similarly, the circumstances of this case do not reflect a grave danger to the public in relative terms, and the sentence will protect the public from further crimes.

And perhaps a critically important factor in this case in terms of need, is to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. A term of 90 months' imprisonment will provide an appropriate opportunity to meet these needs.

Finally, the parties have argued at length the issue of the crack/powder cocaine disparity. The Court has fully considered these arguments and agrees with defendant that the 100-to-1 crack/powder cocaine ratio results in a disproportionately harsh sanction in this case. When sentencing a particular defendant, the district court may deviate from the Guidelines upon a determination that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes. *Kimbrough,* 128 S. Ct. at 575. As the Sentencing Commission has long recognized, the 100-to-1 ratio significantly overstates the differences between crack and powder cocaine. *Id.* at 568. The November 1, 2007 amendments to the Guidelines reflect this recognition by replacing the 100-to-1 ratio with a ratio that varies (at different offense levels) between 25 to 1 and 80 to 1. *Id.* at 573.

The government strenuously argues against any consideration of the crack/powder disparity, asserting that a variance based on the disparity is unwarranted and will result in a sentence inconsistent with the sentences of similarly situated defendants. The government further asserts that any alleged sentencing disparity with regard to blacks is illusory because "[t]he Guidelines and the statute enacted by Congress are color blind." These arguments were effectively rejected by *Kimbrough*, and this Court likewise rejects them. Irrespective of any specific crack ratio calculation,

14

the Court concludes that the crack/powder cocaine disparity is a factor supporting a variance from the Guidelines in the circumstances of this case.

Accordingly, for the reasons stated above and on the record at the March 5, 2008 sentencing hearing, the Court determines that a sentence of 90 months' imprisonment is sufficient, but not greater than necessary to advance the goals of sentencing under § 3553(a)(2). Defendant is ordered to pay a fine of $1,440.00 and a special assessment of $200.00. Other conditions appear in the accompanying judgment of sentence.


DATED: March 14, 2008                         /s/ Janet T. Neff
                                                               JANET T. NEFF
                                                                United States District Judge